**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | **1:16-cv-01429** |
| **v.** | ) | |
| | ) | **COMPLAINT** |
| **HIATT & MASON ENTERPRISES, INC.,** | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **Defendant.** | ) | |
| _____ | ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, and Title I of the

Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race

and to provide appropriate relief to Paul Bowman who was affected by such practices.

As alleged with greater particularity below, the Equal Employment Opportunity

Commission (the "EEOC" or "Commission") alleges that Hiatt & Mason Enterprises,

Inc. ("Defendant") discriminated against Bowman by subjecting him to a hostile work

environment because of his race, black.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331,

1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§

1

2000e-5(f)(1) and (3 ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of North Carolina.

PARTIES

3.     Plaintiff is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.     At all relevant times, Defendant, a North Carolina corporation, has continuously been doing business in the State of North Carolina and the City of Mount Airy, and has continuously had at least 15 employees.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

ADMINISTRATIVE PROCEDURES

6.     More than thirty days prior to the institution of this lawsuit, Bowman filed a charge with the Commission alleging violations of Title VII by Defendant.

7.     On August 17, 2016, the Commission issued to a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to

join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      On October 11, 2016, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

<u>STATEMENT OF CLAIMS</u>

10.      From approximately March 2014 through March 2016, Defendant has engaged in unlawful employment practices at its Mt. Airy, North Carolina facility, and at various  job sites throughout North Carolina and South Carolina, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. 2000(e)-(2)(a)(1).  Specifically, Defendant discriminated against Bowman by subjecting him to severe or pervasive racial comments and conduct that created a racially hostile work environment.  The racial comments and conduct were unwelcome to Bowman and were committed by Bowman's coworkers and Bowman's direct supervisor.

11.      In or around March 2014, Bowman began working with Defendant as a Laborer.

12.      Throughout his employment, Bowman worked with a crew of approximately five white coworkers, including a Leadman.  The crew, including Bowman, was directly supervised by a Foreman.  The crew, including Bowman,

3

frequently worked at job sites throughout North Carolina and South Carolina. The crew traveled to and from the job sites in a company van.

13.    After Bowman was hired in or around March 2014, the Leadman, used the term "nigger" in Bowman's presence on a daily or near daily basis to refer to black persons other than Bowman, including black persons at one or more job sites who were not employed by Defendant.

14.    In or around summer of 2014, the Leadman began to direct his racially derogatory comments to and about Bowman, including calling Bowman "nigger."

15.    Around the summer of 2014, the crew, including Bowman, was returning from a job site in the company work van when the Leadman told the Foreman that the Leadman did not want any "niggers" riding in the work van. Bowman was the only black employee in the work van at that time. As the crew continued to travel, the Leadman repeatedly called Bowman "nigger."

16.    The harassment Bowman endured was typically more severe when the crew traveled out of town.

17.    On multiple occasions during Bowman's employment, the Leadman called Bowman "nigger," and threatened to kick Bowman out of the van in which the crew was traveling. This occurred in the Foreman's presence.

18.    On at least two different occasions, the racial harassment was so severe that Bowman had to exit the van before the crew returned to Mt. Airy.

4

19.     On those occasions when Bowman exited the van to escape the racial harassment, Bowman called someone to pick him up from out of town as he had no other means to return to Mt. Airy.

20.     The Leadman engaged in conduct that was physically threatening to Bowman.

21.     The Leadman brought weapons into the work van and/or onto the worksite on more than one occasion.

22.     On several occasions, the Leadman pointed his finger at Bowman as if mimicking shooting a gun.

23.     Despite knowing of the harassment, the Foreman who was Bowman's direct supervisor, did not take effective action stop the harassment.

24.     In 2014, Bowman notified another Foreman, who supervised a different work crew, that the Leadman on Bowman's crew had called Bowman "nigger."  The second Foreman took no action to stop the harassment.  The harassment continued.

25.     In or around July 2015, again while the crew was in the van driving back from a job site, the Leadman pushed Bowman and called him "nigger" in the Foreman's presence.

26.     Bowman exited the work van before the van had returned to Mt. Airy.

27.     Bowman called someone to pick him up and return him to Defendant's office in Mount Airy, North Carolina.

28.     When Bowman arrived at Defendant's office, the Leadman approached Bowman, and called Bowman "nigger" in the presence of Defendant's Equal Employment Opportunity (EEO) Officer.

29.     Bowman complained to the EEO Officer about the Leadman's use of the term "nigger."

30.     The EEO Officer told Bowman that if Bowman did not like working with Defendant, then Bowman could quit.

31.     The EEO Officer did not issue written discipline to the Leadman for the conduct described above.

32.     The EEO Officer took no action to stop the Leadman's use of the term "nigger."

33.     The Leadman continued calling Bowman "nigger" on a daily or near daily basis.

34.     In or around 2016, Bowman again complained to the EEO Officer about the Leadman's use of the term "nigger."

35.     The EEO Officer did not take effective action to stop the harassment and the harassment continued.

36.     In addition to the harassment described above, Bowman was also subjected to racist comments by the Foreman of his crew.

37.     Bowman's Foreman used "nigger" in jokes and in reference to other black persons in Bowman's presence, sometimes as often as several times a day.

38.     Bowman's Foreman also called Bowman a "dumb black mother fucker" and "black bitch."

39.     Additionally, non-black co-workers on other crews also subjected Bowman to racist comments and racially derogatory terms, including, but not limited to, the terms "nigger," "black moon cricket," and "moyo" – a Spanish word that Bowman learned was racially derogatory toward black people.

40.     Bowman was offended by the Leadman, Foreman's, and coworkers' use of the term "nigger" and other derogatory remarks about black people.  Bowman did not welcome such derogatory statements.

41.     Bowman left Defendant's employment on or about March 1, 2016.

42.     Defendant subjected Bowman to a racially hostile work environment. Defendant failed to take appropriate action to end the racial harassment of Bowman.

43.     The effect of the practices complained of above has been to deprive Bowman of equal employment opportunities and otherwise adversely affect his status as an employee, because of his race, black.

44.     The unlawful employment practices complained of above were intentional.

45.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Bowman.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from maintaining a racially hostile work environment, and from retaliating against employees who oppose unlawful discrimination, make a charge of unlawful discrimination, or participate in an investigation of unlawful discrimination.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for black employees, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make whole Bowman by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including, out of pocket costs and medical expenses, in amounts to be determined at trial.

D.     Order Defendant to make whole Bowman by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

E.     Order Defendant to pay Bowman punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

F.     Grant such further relief as the Court deems necessary and proper in the public interest.

8

G.  Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this the 21st day of December, 2016.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NE
Washington, D.C. 20507

**/s/ Lynette A. Barnes**
LYNETTE A. BARNES (N.C. Bar No. 19732)
Regional Attorney

YLDA MARISOL KOPKA
Supervisory Trial Attorney (IL Bar 6286627)

**/s/ Yolanda W. Brock**
YOLANDA W. BROCK (N.C. Bar No. 36651)
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 W. Trade St., Suite 400
Charlotte, NC 28202
Tel: (704) 954-6463
Fax: (704) 954-6412

**ATTORNEYS FOR PLAINTIFF**

10